———o———

ROBERT STOCKTON, Ex'r, etc., Respondent, *vs.* DANIEL RANSOM, Adm'r, *et al.*, Appellants.

1. *Probate Court—Settlement made in vacation—Assent thereto by executor before appointment—Confirmation in term time of settlement—Injunction to prevent execution sale under—Motion to quash execution.*—The assent of one subsequently an executor, before probate of the will and before his appointment, to a settlement of the testator's estate, and a judgment of the Probate Court, rendered in vacation, ratifying such settlement, are both void; and a subsequent order in term time merely confirming the supposed judgment, is not itself a

judgment and cannot impart validity to the prior proceedings. But in such a case, without allegation of fraud or accident, or danger of irreparable damage or cloud on title by sale of realty, equity will not interfere, by injunction, to prevent an execution sale under such confirmation. A party interested has his remedy at law by motion to quash the execution.

### *Appeal from Ray Circuit Court.*

*J. W. & J. D. Strong,* for Appellants.

*A. H. Vories,* for Respondent.

NAPTON, Judge, delivered the opinion of the court.

This was an application for an injunction to prevent a sale of personal property under execution.

The facts in the case are not controverted and appear to have been these: Wm. Stone was administrator of one Moore, and having himself died in 1870, Ransom, the defendant, was appointed administrator *de bonis non,* of Moore's estate. Stockton, the plaintiff, was named as executor in Stone's will, which was probated on the 13th of May, 1870, and on the same day, Stockton was appointed by the court, as administrator with the will annexed and qualified by giving bond, etc.

Upon the records of the Probate Court, there appears the following entry, made April 30th, 1870, when the court was not in session, and before said Stockton had been appointed administrator by the court, and before the will of Stone had been probated.

"David Ransom, adm'r *de bonis non* of estate of Wm. Moore, deceased, against Robert Stockton, executor of Wm. Stone, deceased. Now, on this day, this cause comes on for trial, said Stockton defendant, being present, and after hearing all the evidence on the part of both plaintiff and defendant, and after reviewing the inventory, and sale bill and all the settlements of said Wm. Stone, former administrator of said Wm. Moore, made during said Wm. Stone's lifetime, and the court, after hearing the evidence and reviewing the papers and documents aforesaid, it is found there was error and mistakes committed by said Wm. Stone in his Stone's favor, as follows, to-wit:" (here follow various items) "together with other and

sundry errors made and committed by said Stone and in his favor, all amounting to the sum of $2,000 ; and it is agreed by said Stockton as executor, as aforesaid, and said Ransom, administrator as aforesaid, that there shall be a complete and full settlement of all and singular the differences of said Moore's and Stone's estates aforesaid. It is therefore ordered, adjudged and decreed by the court, that Daniel Ransom, adm'r of Wm. Moore, deceased, *de bonis non*, have judgment against Robert Stockton, ex'r of the estate of Wm. Stone, deceased, in the said sum of $2,000, and that he have execution therefor, and for his costs laid out and expended on this behalf, and the court further orders the said Daniel Ransom, adm'r as aforesaid, to proceed to inventory said sum of $2,000 as a judgment against himself as said adm'r of Wm. Moore, etc.; and it is hereby agreed between said Robert Stockton, ex'r of estate of Wm. Stone, and Daniel Ransom, adm'r, *de bonis non* of estate of Wm. Moore, dec'd, that the within and foregoing order and judgment shall now be filed and spread of record when the said Stockton shall have made probate of the last will and testament of said Wm. Stone, dec'd. Witness our hands this 30th day of April, 1870.

ROBERT STOCKTON,
DANIEL RANSOM,
Adm'r *de bonis non*.

Attest LEWIS H. WEATHERBY,
    Judge of Probate of DeKalb County.

Then follows on the record, the following, dated June 13, 1870 : "Now on this day in term time, court confirms the judgment had in vacation (April 30th, 1870) against the estate of Wm. Stone, deceased, in the sum of $2,000, the will of said Wm. Stone, dec'd, having since been admitted to probate."

Upon this judgment, or supposed judgment, Stockton paid $1,196.67, and on the 31st of Oct., 1873, the probate judge issued an execution for the remainder due, of $940, in favor of Ransom, adm'r, against the plaintiff, Stockton, which recited that on the 13th of June, 1870, Ransom had recovered a judgment against the plaintiff in said Probate Court for the

sum of $940, which the court had ordered plaintiff to pay over to Ransom, that he had refused to pay the same, and therefore the sheriff was ordered to make the sale of the goods and chattels of said Stockton.

Under this writ the sheriff levied on certain notes, the property of Stone, in the hands of Stockton, the executor, amounting $1,000, and took the same from Stockton's possession.

An injunction was asked to prevent the sheriff from selling this property. The usual averments were made in the petition, that the plaintiff was without remedy at law, and that irreparable damage would be sustained by plaintiff unless the sheriff was restrained from selling these notes.

A temporary injunction was granted, and after the answer and replication were filed and the evidence heard, the court made the injunction perpetual.

It is apparent from the record of the Probate Court, that the supposed judgments in this case were mere nullities. The assent of Stockton to a settlement, before the will of his testator was proved and before his appointment, was of no validity; and the judgment of the Probate Court in vacation was equally void. The subsequent entry in term time contained none of the essential requisites of a judgment, but was simply a confirmation of a supposed judgment, which had no existence. The execution, therefore, had no judgment to support it.

The only question, therefore, is whether this was a case upon the facts stated, to authorize the interposition of a court of equity, upon the general allegation that the plaintiff was without adequate remedy at law. The execution was levied on personal property, upon which no *pretium affectionis* existed, no real estate was levied on, the sale of which might obscure the title, and no facts were stated in the petition to show that any irreparable damage could ensue, or that any damage could result that could not be readily compensated. No reason is perceived why an application to the Probate Court to quash the execution should not have been made and

none is alleged.   No fraud or accident is alleged to call for the interposition of a court of equity.

It is averred in the petition that the judgments or judgment on which the execution issued were void, and this allegation is sustained ; but will a court of equity enjoin proceedings under an execution on a void judgment, without the allegation and proof of some fraud or accident which prevented the party from moving in the law court?   The plaintiff in this case had only to apply to the Probate Court to have the execution quashed, which had no judgment to support it ; and, if the Probate Court refused an appeal to the Circuit Court, enabled him to get the opinion of another court.

The remedy at law was adequate so far as the facts appear. It was only necessary to apply to the Probate Court, from which the execution issued to have it quashed.   No judgment of that court authorized the execution.   There was no judgment in fact entered, so far as the records show.   A mere confirmation of an agreed judgment in vacation without a formal judgment, did not amount to a judgment.

There is nothing averred in the petition, nor proved upon the trial, to show that the Probate Court could not arrest this execution, illegal as it was.   Why then ask the interposition of a court of equity?

Judge Story says (Sto. Eq. Jur., § 887) " after a judgment at law, any facts, which prove it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a court of law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will, in general, authorize a court of equity to interfere by injunction, to restrain the adverse party from availing himself of such judgment. (See also Adams Eq., 391 where the same doctrine is asserted and authorities cited.)

But here, in the first place, there was no judgment to set aside; and had there been an irregular judgment, nothing is averred to show that the execution could not have been arrested or quashed in the court where the supposed judgment was entered.

The judgment must be reversed. The other judges concur.